```
          UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
                 AT CHARLESTON
```

JOSHUA DANIELS,

       Plaintiff,

v.                          Civil Action No. 2:20-cv-00779

CITY OF SOUTH CHARLESTON,
LT. YEAGER,
OFFICER BARBAGALLO, and
PATROLMAN MOSS,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is the defendants' motion to dismiss the complaint, filed on December 28, 2020 (ECF No. 5).

### I. Background

The plaintiff initiated this action by filing a complaint in Kanawha County Circuit Court on or about August 12, 2020. See ECF No. 1-1 at 3-10. On November 30, 2020, the defendants removed the action to this court based on federal question jurisdiction. See ECF No. 1.

According to the complaint, the plaintiff and his friend became intoxicated after drinking at a party and decided to "sleep it off" inside the plaintiff's vehicle. Id. ¶¶ 8-9.

They asked for and received permission to leave the vehicle parked at a convenience store while they slept. See id. ¶ 10. As they slept, a delivery driver called the South Charleston Police Department, advising that two men were asleep in a vehicle parked at the convenient store and would not wake when he shook the vehicle. See id. ¶ 11.

> The complaint then alleges that
>
> [p]olice dispatched several units to the scene, as well as firefighters. Upon arrival the officers present proceeded to forcefully enter [the] [p]laintiff's vehicle and administer him Narcan.
>
> After being administered Narcan twice, [the] [p]laintiff was then transported handcuffed in the back of an ambulance to [a nearby] [h]ospital while his vehicle was towed.

Id. ¶¶ 12-13. The complaint does not specify which police officers – and notably does not specify which, if any, of the individual defendants (Lt. Yeager, Officer Barbagallo, and Patrolman Moss) – entered the vehicle, administered Narcan, or took part in transporting him to the hospital. Due to the affects that Narcan has on someone who is not overdosing, the plaintiff alleges he was "very anxious and energetic." Id. ¶ 14.

At the hospital, the plaintiff "began attempting to explain to police that he had not done any illicit drugs" and did not need medical attention. Id. ¶ 15. Because of the

2

Narcan, the plaintiff "was talking loudly and nervously," and the officers told him that, "if he did not quiet down and stop using profane language[,] he would be arrested."  Id. ¶¶ 15-16.  The plaintiff continued to ask why he had been arrested and "refused to sign any medical forms," as he believed he had been wrongfully detained.  Id. ¶ 16.  When he "attempt[ed] to leave the hospital," the plaintiff alleges that he was "violently and forcefully assaulted by the officers present[]" again without identifying them "and placed under arrest for [d]isorderly [c]onduct and [o]bstructing an [o]fficer."  Id. ¶ 17.  He alleges that the "[d]efendants," presumably the individual defendants, were among the officers who "arrested" him after "attempt[ing] to force [him] to calm down."  Id. ¶ 21.

In Count I of the complaint, the plaintiff asserts a claim for outrageous conduct or intentional infliction of emotional distress against the individual defendants.  See id. at 7.  He alleges that the individual defendants "knew or should have known that administering Narcan to an individual who is not overdosing on illicit drugs can cause a severe mental and physical reaction" and that their "attempt to force [the] [p]laintiff to calm down" and subsequent arrest caused the plaintiff "severe emotional distress."  Id. ¶¶ 19-22.  Based on

3

these allegations, the plaintiff seeks compensatory and punitive damages and attorney's fees and costs. See id. ¶ 24.

In Count II, the plaintiff asserts a claim, pursuant to 42 U.S.C. § 1983, for excessive force and cruel and unusual punishment, in violation of his Eighth Amendment rights, against all the defendants. See id. at 8. He alleges that his "assault and battery" by the "[d]efendants" amounted to excessive force and cruel and unusual punishment. Id. ¶ 27. He further alleges that the violation of his constitutional rights resulted from the "implementation of a custom, policy, or official action of the South Charleston Police Department employees" to "use excessive force and cruel and unusual punishment while detaining individuals" and that excessive force "has been employed against multiple West Virginia citizens on multiple occasions within the past 5 years" and has been "sanctioned" and "condoned by supervising personnel." Id. ¶ 28. Based on these allegations, the plaintiff seeks compensatory and punitive damages as well as attorney's fees and costs. See id. ¶ 29.

On December 28, 2020, the defendants filed the current motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6). See ECF No. 5; ECF No. 6.

4

## II.   Legal Standard

Fed. R. Civ. P. 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) correspondingly provides that a pleading may be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" meaning that the pleaded "factual content . . . allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When ruling on a motion to dismiss, the court "accept[s] all well-pleaded facts as true and draw[s] all reasonable inferences in favor of the plaintiff[]," Attkisson v. Holder, 925 F.3d 606, 619 (4th Cir. 2019), but need not accept conclusory statements, legal conclusions, or unwarranted inferences, see id.; see also Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017).

III. Discussion

A.  Count I

The defendants first argue that the Count I claim brought only against the individual defendants[1] for intentional infliction of emotional distress ("IIED") must be dismissed because the complaint does not plausibly allege that the individual defendants' conduct was outrageous. The court agrees.

It appears from Count I that the plaintiff might be asserting his IIED claim based on one or both of two separate actions: (1) the "administ[ration] [of] Narcan" to him when he "was not overdosing on illicit drugs" and (2) the "attempt to force [him] to calm down" and then "arrest" him when he was in an agitated state after being wrongfully administered Narcan. ECF No. 1-1 ¶¶ 19-21.

---

[1] Noting that the complaint is not clear regarding which of the defendants Count I is asserted against, see ECF No. 1-1 ¶¶ 18-24, the defendants argue that Count I should be dismissed to the extent it is brought against the City of South Charleston (the "City") on the ground of immunity, see ECF No. 6 at 13-14. In his briefing, the plaintiff clarifies that Count I is brought only against the individual defendants and not against the City. See EFC No. 8 at 4.

As for the first potential basis for the IIED claim, the court concludes that the plaintiff has failed to plausibly allege that the individual defendants administered the Narcan. Although the complaint alleges that the individual defendants should have known of the agitated state that might result from the administration of Narcan to an individual who is not overdosing, see id. ¶¶ 19-20, it does not allege that any of the individual defendants administered Narcan to the plaintiff.[2]

The remaining potential basis for the claim cannot be reasonably considered outrageous conduct. See Syl. pt. 4, Travis v. Alcon Labs., Inc., 504 S.E.2d 419, 421 (W. Va. 1998) (explaining that "[w]hether conduct may reasonably be considered outrageous is a legal question" for the court to decide). Attempting to "force" a recently-arrived emergency room patient, who, after being administered Narcan, is "talking loudly and nervously," to "calm down" by informing him that he will be arrested if he fails to "quiet down and stop using profane language," id. ¶¶ 15-16, cannot reasonably be considered so outrageous that it exceeds the bounds of decency, see Tanner v.

---

[2] To the extent the plaintiff asserts, as a basis for his IIED claim, that the individual defendants assaulted and battered him during his arrest, the court concludes that allegations regarding the assault and battery are conclusory, as the complaint fails to present any non-conclusory description of the arrest. See Part III.B, infra.

Rite Aid of W. Va., Inc., 461 S.E.2d 149, 157 (W. Va. 1995) ("[IIED] liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." (quoting Restatement (Second) of Torts § 46, cmt. d (1965))). Similarly, placing the same individual, who then attempts to leave the hospital, under arrest for disorderly conduct cannot reasonably be considered outrageous conduct. See Weigle v. Pifer, 139 F. Supp. 3d 760, 778 (S.D.W. Va. 2015) ("Courts applying West Virginia law . . . [and] consider[ing] outrage claims against law enforcement officers predicated on their conduct during an arrest . . . have determined that the actions of the law enforcement officer, even if otherwise actionable, did not qualify as legally outrageous."); id. (collecting cases); see also Hessami v. Corp. of Ranson, 170 F. Supp. 2d 626, 633 (N.D.W. Va. 2001) (lawfully effectuating a lawful arrest does not amount to outrageous conduct).

Because the plaintiff fails to plausibly allege conduct that may reasonably be considered outrageous, the court dismisses Count I of the complaint.

B.  Count II against the individual defendants

The defendants next argue that the plaintiff's Count II excessive force claim, insofar as it is brought against the

8

individual defendants, must be dismissed because the complaint fails to set forth sufficient factual matter from which the court could reasonably infer their liability.  The court agrees.

The plaintiff's excessive force claim is brought expressly under the Eighth Amendment.  See ECF No. 1-1 ¶ 27.  Further, the complaint contains numerous allegations that appear to be aimed specifically at the Eighth Amendment standard for excessive force claims.  See, e.g., ECF No. 1-1 ¶ 26 ("Defendant[s'] actions were done to Plaintiff with the intent to inflict unnecessary harm."); id. ¶ 27 (alleging the force used amounted to "cruel and unusual punishment"); id. ("[T]his cruel and unusual punishment was . . . done with malicious intent.").  However, in his briefing, see ECF No. 8 at 2, the plaintiff concedes that the Eighth Amendment is inapplicable to his allegations of excessive force in the course of an arrest and that the Fourth Amendment applies instead, see Graham v. Connor, 490 U.S. 386, 394-96 (1989).  The plaintiff argues against dismissal on this basis because, he says, the complaint provided adequate notice of an excessive force claim that would be assessed under the Fourth Amendment.  The court construes the claim as if brought under the Fourth Amendment.

A plaintiff pursuing a Fourth Amendment excessive force claim must allege, at a minimum, that the defendants used

9

some amount of force. See Graham, 490 U.S. at 394-96 (requiring use of unreasonable force to establish a Fourth Amendment excessive force claim). Here, however, the complaint fails to plausibly allege that the named individual defendants used any force against the plaintiff. Only four allegations in the complaint could possibly give rise to an excessive force claim against the individual defendants: (1) "officers . . . administered [the plaintiff] Narcan," ECF No. 1-1 ¶ 12; (2) the plaintiff "was violently and forcefully assaulted by the officers present[] [at the hospital] and placed under arrest," id. ¶ 17; (3) "Defendants Yeager, Moss, and Barbagallo harassed, assaulted, battered, and used excessive force against Plaintiff as previously described herein," id. ¶ 26; and (4) "assault, battery, and excessive force [were] used against Plaintiff by Defendants," id. ¶ 27. The latter three of these allegations amount to nothing more than conclusory statements or legal conclusions that the court need not accept. See Attkisson, 925 F.3d at 619; Beck, 848 F.3d at 270.[3] Although the remaining

---

[3] Other courts in this circuit have concluded that allegations that officers, in the course of their duties, "battered" or "assaulted" a plaintiff, without more, amount to mere legal conclusions that are insufficient to plausibly allege an excessive force claim. See Hill v. Palmer, No. 1:18-cv-294-FDW, 2019 WL 937333, at *4 (W.D.N.C. Feb. 26, 2019); Johnson v. Thomas, No. 4:10-CV-151-BR, 2011 WL 1344008, at *5 (E.D.N.C. Apr. 8, 2011); see also Iqbal, 556 U.S. at 678 ("[T]he [Rule 8]

10

allegation – that officers administered Narcan to the plaintiff – is factual in nature, the complaint fails to identify any of the administering officers, and nothing in the complaint suggests that any of the individual defendants were among them.

Because Count II fails to plausibly allege a Fourth Amendment excessive force claim against the individual defendants, the court dismisses Count II as to them.

C. <u>Count II against the City</u>

Next, the defendants argue that Count II must be dismissed as to the City because the plaintiff fails to plausibly allege a <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), claim.

Under <u>Monell</u>, a municipality sued pursuant to § 1983 "is liable only for its <u>own</u> illegal acts," specifically, "if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." <u>Owens v. Balt. City State's Att'ys Off.</u>, 767 F.3d 379, 402 (4th Cir. 2014) (emphasis in original). The plaintiff appears to assert a condonation theory of liability, under which a municipality may

---

pleading standard . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

11

be liable for a constitutional violation resulting from its policymakers' failure to stop or correct a widespread pattern of unconstitutional conduct by municipal officials. See id. Under this theory, the plaintiff "must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." Id. (internal quotation marks and brackets omitted). "Both knowledge and indifference can be inferred from the extent of employees' misconduct." Id. at 402-03 (internal quotation marks omitted).

As the defendant's point out, the complaint's Monell-related allegations are brief. The plaintiff alleges:

> [T]he violation of [the plaintiff's] federal constitutional rights was caused by implementation of a custom, policy, or official act of the South Charleston Police Department employees including, but not limited to, their ongoing use of excessive force and cruel and unusual punishment while detaining individuals. The use of excessive force has been employed against multiple West Virginia citizens on multiple occasions within the past 5 years. The inappropriate use of force has been sanctioned by supervisors and is condoned by supervising personnel.

ECF No. 1-1 ¶ 28. The defendants argue these allegations lack the factual detail needed to satisfy the plausibility test.

The Fourth Circuit addressed the same argument the defendants advance here in Owens. In that case, the plaintiff

12

alleged that police officers violated his constitutional rights by withholding exculpatory evidence during his criminal trial. See Owens, 767 F.3d at 385.  He brought a Monell claim against the municipality's police department under a condonation theory, "alleg[ing] that at all times relevant to this case, the [department] maintained a custom, policy, and/or practice of condoning its officers' conduct in knowingly, consciously, and repeatedly withholding and suppressing exculpatory evidence" and "that by failing to correct its officers' pervasive suppression of evidence, the [department] injured him."  Id. at 402 (internal quotation marks and brackets omitted).  As in this case, the department argued that the allegations failed to meet the Rule 12(b)(6) plausibility standard because the allegations were conclusory and lacked factual detail.  See id. at 403.

The Fourth Circuit disagreed with the department.  It first noted that, although "[p]revailing under . . . a [condonation] theory is no easy task," "alleging such a claim is . . . easier," and "[t]he recitation of facts need not be particularly detailed."  Id. at 402-03.  The Fourth Circuit then noted that the plaintiff had supported his claim with two "brief, but non-conclusory," factual allegations: (1) reported and unreported cases from the relevant period established that the department had a practice of knowingly and repeatedly

13

suppressing exculpatory evidence, and (2) numerous motions filed and granted during this period demonstrated that the department maintained a practice of allowing or condoning this type of behavior. Id. at 403. The Fourth Circuit concluded that "[t]he assertions as to 'reported and unreported cases' and numerous 'successful motions' are factual allegations, the veracity of which could plausibly support a Monell claim," because the allegation that "officers withheld information on multiple occasions could establish a 'persistent and widespread' pattern of practice, the hallmark of an impermissible custom." Id. The Owens court also pointed to a decision from the First Circuit concluding that allegations of a "'volume of cases'" involving similar constitutional violations to those alleged by the plaintiff contained sufficient factual matter to support a Monell claim, even if "the complaint was couched in general terms" and the "cases" comprising the "volume" were not otherwise identified. Id. at 403-04 (brackets omitted) (quoting Haley v. City of Bos., 657 F.3d 39, 53 (1st Cir. 2011)).

  The court is constrained by the Fourth Circuit's decision in Owens to conclude that the plaintiff's complaint contains sufficient factual detail to support his Monell claim against the City. The allegation that the unconstitutional excessive force the plaintiff claims he suffered "has been

14

employed against multiple West Virginia citizens on multiple occasions within the past 5 years," EFC No. 1-1 ¶ 28, is brief and fails to identify any of the underlying instances of excessive force. However, the courts in Owens and Haley faced similarly brief and imprecise allegations and nonetheless determined they sufficed. See Owens, 767 F.3d at 403; Haley, 657 F.3d at 53. Further, as in Owens and Haley, the plaintiff's factual allegation that municipal officials have used excessive force on multiple occasions in the recent past, which the court must accept as true, plausibly supports his Monell claim because allegations of multiple instances of the same constitutional violation can establish a persistent, widespread pattern of practice that forms the basis of an impermissible custom. See Owens, 767 F.3d at 403; Haley, 657 F.3d at 53. This is so because allegations of extensive misconduct by municipal officials can support a reasonable inference of both knowledge and indifference on the part of the municipality's policymakers. See Owens, 767 F.3d at 402-03.

Accordingly, the court must deny the motion to dismiss to the extent it seeks the dismissal of the Count II Monell claim against the City.

IV. Conclusion

For the foregoing reasons, it is ORDERED that the defendants' motion to dismiss the complaint (ECF No. 5) be, and hereby it is, granted to the extent it seeks dismissal of Count I in its entirety and Count II as to Lt. Yeager, Officer Barbagallo, and Patrolman Moss and denied to the extent it seeks dismissal of Count II as to the City.

It is further ORDERED that Count I in its entirety and Count II, to the extent it is asserted against Lt. Yeager, Officer Barbagallo, and Patrolman Moss, be, and hereby they are, dismissed.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: August 16, 2021

John T. Copenhaver, Jr.
Senior United States District Judge